UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUVIM SONNIK, | No. 2:18-cv-00366-TLN-CKD |
| Plaintiff, | |
| v. | ORDER |
| ALLSTATE INSURANCE COMPANY, et al., | |
| Defendants. | |

Pending before the court is pro se plaintiff Ruvim Sonnik's request to dismiss the action, claiming that another individual, Igor Chepel, filed and litigated this action in Sonnik's name without his permission. (ECF No. 16.) The court held a status conference on this matter on May 22, 2019. (ECF No. 20.) Defendant Allstate Insurance Company ("Allstate") and third-party Chepel each filed status reports. (ECF Nos. 18, 19.) Ruvim Sonnik and Igor Chepel each appeared at the hearing on his own behalf. David Simonton specially appeared on behalf of Allstate. Upon review of the documents submitted, upon hearing the arguments of counsel, and good cause appearing therefor, THE COURT FINDS AS FOLLOWS:

I.  BACKGROUND

This case was initiated on February 15, 2018, pursuant to 42 U.S.C. § 1981 based upon defendant's alleged national origin discrimination against plaintiff in connection to an insurance

policy.  (See ECF Nos. 1, 4.)

The case was closed on August 29, 2018, after plaintiff failed to follow orders of the court.  (See ECF Nos. 5, 8.)  Then, on September 26, 2018, a declaration was submitted—purportedly by Sonnik—stating that Sonnik had been in the Ukraine since about March 15, 2018, and that he had just recently returned to the United States and learned of the court's activity in this matter.  (ECF No. 10.)

As a result, on December 20, 2018, District Judge Troy L. Nunley reopened the case, dismissed all defendants but Allstate, and directed plaintiff to submit service documents for Allstate to the U.S. Marshal.  (ECF No. 11.)

On April 15, 2019, plaintiff filed the pending request to dismiss this action.  (ECF No. 16.)  Plaintiff states that Igor Chepel filed the case "without my permission . . . [and] used my name and signature . . . without informing me."  (ECF No. 16.)  Plaintiff asserts that he has never lived at the address in Carmichael, California listed by Chepel, who "also opened a lot of cases in different counties, making my life a complete struggle and a huge mess.  I ask, please cancel this case!"  (Id.)

As such, the court ordered a status conference to address this issue.  (ECF No. 17.)

A.     Statements Prior to Status Conference

In its May 16, 2019 statement prior to status conference, Allstate explains that it "has never been served with process in this case, and hence has never appeared, [but] it considers the issues surrounding Chepel's involvement to be of paramount importance" and, given this and the court's order, Allstate would make a special appearance at the hearing.  (ECF No. 18 at 2.)

Allstate's lengthy and detailed statement paints a shocking picture of Chepel as an unlicensed "lawyer" systematically preying on Sacramento's Russian community in a long-running scheme involving both the state and federal courts.  Allstate avers that "this case is actually the *fourth* duplicative lawsuit Chepel caused to be brought, in Sonnik's name, over the same specious subject matter.  This Quixotic crusade all originates from a March 2015 auto accident between Sonnik and an Allstate insured, Susan Steele, which allegedly caused Sonnik to incur $7,131 in medical bills."  (ECF No. 18 at 2.)  After a small-claims trial failed to yield any

1 damages for Sonnik, Chepel filed "four repetitive lawsuits against Allstate, its CEO, and almost 100 of its individual employees and outside attorneys" in an attempt to recover insurance proceeds related to the accident. (Id.)

Allstate alleges that the Sonnik cases are in keeping with Chepel's "business model" of filing frivolous lawsuits under other people's names. (ECF No. 18) "Allstate is informed that Chepel finds people from the [local Russian] community who, like Sonnik, have been involved in accidents and promises to 'help' them recover insurance proceeds. Chepel then tells the insurer he is a relative of the claimant, namely an 'uncle,' so he can act as his or her designated representative. His real motivation, presumably, is to take a cut of whatever claim payments he can extract from the insurer under threat of litigation. If his demands are unmet, Chepel will then initiate lawsuits (more than one, if necessary) against the insurer . . . Although his 'relatives' purport to represent themselves, in pro per, Chepel actually controls the litigation behind the scenes." (Id. at 2-3.)

In addition to his protracted litigation with Allstate, "it appears Chepel has employed a similar *modus operandi* against another carrier, Nationwide, which his various 'nieces' and 'nephews' have sued in multiple proceedings as pro per plaintiffs, but with Chepel's address on almost all the pleadings." (ECF No. 18 at 3.) Allstate attaches numerous declarations, letters, and court records in support of these and other statements about Chepel's record of abusive litigation. It notes that Chepel has been designated a vexatious litigant in the California courts, but this has not prevented him from litigating in others' names. (Id. at 4.)

Allstate indicates that Sonnik is now facing legal costs approaching $100,000 for the adverse costs, fees, and sanctions rendered against him in the Chepel cases. (ECF No. 19 at 9.) "To be clear, Allstate cannot say for sure whether, or to what extent, Sonnik was previously unaware of all of Chepel's machinations. . . . Still, Chepel undeniably bears a large share of the blame for the litigation misconduct that placed Sonnik in his current predicament. And if Chepel did all this without Sonnik's consent, then Chepel would appear to face serious civil or even criminal liability—which may provide another avenue Sonnik could use to satisfy the judgments against him." (Id. at 9-10.)

3

Allstate argues that if Chepel is "not stopped, he will do it all again without consequence or remorse." (ECF No. 19 at 10.) It asks that the court "bring the full weight of its powers to this situation" and offers to provide any additional information to assist in that process. (Id.)

In his May 20, 2019 statement prior to status conference, Chepel accuses Sonnik and Allstate of colluding in an "attempt to blame me for everything bad that has happened in the many litigations that Mr. Sonnik has filed." (ECF No. 19 at 1-2.) At the same time, Chepel admits that Sonnik "hired me to serve some documents for him and to file documents for him and on a couple of occasions he asked me to go to Court for him to let the Judge know that he could not appear . . . Sonnik has also asked and authorized me to sign his name to some documents on some occasions when he was out of town and could not personally appear or sign his own name to the documents." (Id.) (Id. at 2.)

Attached to his statement, Chepel includes a copy of a signed "agreement" that designates Chepel as Sonnik's "authorized representative." (ECF No. 19 at 10-12.) According to the agreement, Chepel is not an attorney, but he was hired "to assist [Sonnik] in his claim regarding an accident that occurred on or about April 21, 2017 in Sacramento, California and any subsequent action arising therefrom." (Id. at 10.)

Chepel admits that Sonnik never lived at the address in Carmichael, California listed on the complaint and other court filings. However, Chepel asserts that Sonnik "slept on my couch on a couple of occasions" and asked "if he could use my address because he was having domestic problems with his wife and he did not want her to know about his Court proceedings." (ECF No. 19 at 3.)

B. May 22, 2019 Status Conference

At the hearing, Sonnik reasserted that this case was filed by Chepel, without Sonnik's approval. Chepel admitted that he filed the current matter for Sonnik, but claimed that it was at the direction of Sonnik. Chepel also admitted that he signed Sonnik's name on court papers in the past, but not in this matter. When directly questioned whether he files lawsuits on behalf of others in his community, Chepel responded "not really," but admitted that he filed at least one other small claims matter on behalf of a "niece."

4

Thereafter, the court heard from Allstate's representative, who reiterated Allstate's concerns regarding Chepel. Of note, Mr. Simonton directed the court to Exhibit 5 of Allstate's statement, which is a letter from Chepel. (See ECF No. 18-5.) In the letter, Chepel threatened that he would file complaints against Allstate in state and federal court, if his demands were not met. (Id.) After Allstate refused to acquiesce, the threatened complaints were filed in state and federal court, though they were ostensibly filed by Sonnik. Mr. Simonton also pointed out that the letters Sonnik allegedly sent to Allstate bear a remarkable resemblance to the letters sent by Chepel.

Additionally, Mr. Simonton questioned whether Sonnik was actually in the Ukraine, from March until September of 2018, as declared before this court when this matter was reopened. (See ECF No. 10.) According to court documents from a matter in Yolo County Superior Court, Sonnik signed a declaration at Chepel's address in Carmichael, California on August 1, 2018. (See ECF No. 18-19.)

II. DISCUSSION

While many issues in this matter remain unclear, it is apparent that Sonnik does not wish to pursue this matter further. (ECF No. 16.) The Federal Rules of Civil Procedure allow a plaintiff to dismiss an action without "a court order by filing [] a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(i). As defendant has not yet filed an answer or motion for summary judgment, this rule applies, and the matter may be voluntarily dismissed.

At the same time, based upon the representations to the court by Sonnik, Chepel, and Allstate, the court has grave concerns regarding the conduct of Igor Chepel in this matter. The court is troubled by all of the actions that have taken place here and it certainly appears that there has been fraud on the court by one or more individuals. Accordingly, the matter is referred for civil and/or criminal investigation to the United States Attorney's Office for the Eastern District of California because it does appear that there has been a wide-ranging pattern of behavior that is unacceptable, if not fraudulent and criminal.

////

III. CONCLUSION

Based on the forgoing, IT IS HEREBY ORDERED THAT:

1. Plaintiff's first amended complaint is voluntarily dismissed pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i).
2. The Clerk of Court shall close this case.
3. The underlying conduct in this case is referred for civil and/or criminal investigation to McGregor Scott, United States Attorney for the Eastern District of California.
4. The Clerk of Court shall serve a copy of this order on the United States Attorney's Office, Robert T. Matsui United States Courthouse, 501 I Street, Suite 10-100, Sacramento, CA 95814.

Dated: June 3, 2019

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

14/sonnik.18cv366